IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

VICKY J. ASHWORTH                                                                    PLAINTIFF

        v.                                    Civil No. 10-2147

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                       DEFENDANT

## MEMORANDUM OPINION

**I.**    **Factual and Procedural Background**

      Plaintiff, Vicky J. Ashworth, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act").

      Plaintiff protectively filed her SSI application on February 6, 2009, alleging disability as of May 9, 2006, due to emphysema, chronic obstructive pulmonary disease ("COPD"), hearing problems, urinary incontinence, reflux/gastritis, and joint pain. Tr. 10, 79-80, 140-142, 160, 163, 223-225. On the application date, Plaintiff was forty eight years old with a GED and barber training. Tr. 45, 166, 629. She has no past relevant work. Tr. 20.

      Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 83-88. At Plaintiff's request, an administrative hearing was held on December 11, 2009. Tr. 39-74. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on March 24, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-21. Subsequently, the Appeals Council denied Plaintiff's Request for Review on September 10, 2010,

thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

**II.     Medical History**

Plaintiff has a history of COPD, emphysema, urinary incontinence, back and joint pain, chronic ear infection, gastritis, gastroesophageal reflux disease ("GERD"), reflux, headache, and depression. Tr. 227-541.

On January 22, 2009, Plaintiff presented to St. Edward Mercy Medical Center ("St. Edward's") with complaints of COPD, shortness of breath, and cough. Tr. 276-288. Plaintiff admitted smoking two packs of cigarettes per day. Tr. 276. Wheezing was noted on physical examination. Tr. 277. A CT of Plaintiff's chest revealed right lower lobe infiltrate. Tr. 277, 280-281. An echocardiogram revealed mildly dilated right-sided chambers, normal wall motion, normal left ventricular systolic function with an ejection fraction estimated at 89%, and no evidence of intracardiac masses or intracardiac thrombus. Tr. 278. Color flow and Doppler studies revealed trace tricuspid regurgitation with an estimated PA pressure of 23 mmHG. Tr. 278. Plaintiff was assessed with chronic COPD with exacerbation, possible pneumonia, and low potassium. Tr. 277.

Between March 2008 and January 2010, Plaintiff was treated by James Saunders, P.A., at RVPCS Northside Clinic for the following complaints: COPD, shortness of breath, fatigue, emphysema, urinary incontinence, arthritis, acid reflux, chronic suppurative otitis media, muscle spasms, gastritis, vitamin D deficiency, and depression/mood problems. Tr. 227-275, 588-627. She was prescribed the following medications: Oxybutynin (incontinence), Chlorphenamine (antihistamine), Qvar inhaler, Naproxen, Meloxicam (arthritis), Albuterol aerosol with adapter, Simethicone (gastritis), Nitroglycerin, Advair Diskus, Spiriva, ProAir aerosol, Ranitidine (acid

reflux), Fluoxetine (depression), Protonix (acid reflux), Lasix, and calcium carbonate. Tr. 227-229.

In March 2008, Plaintiff complained of COPD, acid reflux, arthritis, moodiness, and urinary incontinence. Tr. 610-612. She reported that Ranitidine did not completely help her acid reflux and Naproxen made her sleepy. Tr. 610. She stated Prozac helped in the past, but caused weight gain. Tr. 610. Saunders prescribed Fluoxetine, Oxybutynin for incontinence, Meloxicam for arthritis, and Ranitidine. Tr. 612. On May 6, 2008, Saunders noted a pronounced cystocele and suspected a rectocele. Tr. 608-610. In June 2008, Plaintiff was treated for acid reflux and urinary incontinence. Tr. 606-607. Saunders gave Plaintiff samples of Protonix and discussed the possibility of a pessary for urinary incontinence. Tr. 606-607. In August 2008, Plaintiff tested positive for H. Pylori bacteria and was treated with antibiotics. Tr. 604-606.

As of February 26, 2009, Plaintiff stated she had quit smoking and was using nicotine gum. Tr. 230. On examination, Plaintiff had normal respiration rhythm and depth, and her lungs were clear to auscultation. Tr. 232. However, she complained of fatigue and dyspnea after walking half a block. Tr. 596. Saunders prescribed Keflex, renewed Plaintiff's prescriptions for Advair, Spiriva, and ProAir, and gave samples until Plaintiff was approved for the medication assistance program. Tr. 597.

In March 2009, Plaintiff was treated for sinusitis and ear infection. Tr. 593-595. In June and July 2009, Plaintiff complained of ear drainage, muscle spasms (due to low potassium), abdominal pain, neck pain and stiffness, shoulder and back pain, and acid reflux. Tr. 589-591. She was smoking eight cigarettes per day. Tr. 592. On examination, Plaintiff had normal respiration rhythm and depth and her lungs were clear to auscultation. Tr. 590, 593. Heart rate and rhythm were normal with no murmurs. Tr. 590, 593. Plaintiff had epigastric and lower abdominal tenderness, but no

other abdominal abnormalities were noted. Tr. 590. Saunders noted some cervical spine tenderness at C3-4 and at the coracoid process. Tr. 593. However, Plaintiff had good range of motion in her right shoulder with no impingement. Tr. 593. Plaintiff with assessed with chronic suppurative otitis media, chest pain, shoulder joint pain, and limb cramps. Tr. 590, 593.

In December 2009, Plaintiff reported persistent nausea, bloating, and heartburn, which had not been alleviated by Ranitidine or Prilosec. Tr. 636-638. She also reported coughing, ear pain, and a stuffy nose. Tr. 636. On examination, Plaintiff had crackles in the right lower lobe and tenderness throughout her abdomen. Tr. 637. She was treated with Carafate, Rondec-DM, and Levaquin. Tr. 638. At a follow-up appointment, Plaintiff's cough and stomach ache were improved, although she still had a stuffy nose. Tr. 634-635. She was given corticosteroid injections, antibiotics, and a muscle relaxer. Tr. 635.

On March 13, 2009, Plaintiff went to Arkansas Rehabilitation Services for a psychological screening. Tr. 629-632. Plaintiff was cooperative and put forth good effort during testing. Tr. 629. She reported being incarcerated for eighteen months on drug-related charges (methamphetamine), but stated she had been clean for four years. Tr. 630. She reported her mental impairments as mood swings and depression. Tr. 630. She had not received formal mental health treatment, but was taking Prozac. Tr. 630. Various testing revealed below average to average intellectual and academic ability. Tr. 630-631. Plaintiff had below average scores in spelling, math calculation, and reading comprehension. Tr. 631. Strengths were noted in motor processing and sequencing skills. Tr. 631. Cary W. Crawford, a licensed psychological examiner, diagnosed Plaintiff with mood disorder not otherwise specified. Tr. 631. She noted that depression, insufficient physical/emotional energy, and difficulty concentrating as problem areas likely to be manifested in an employment setting. Tr. 631.

She also noted difficulty with mathematics, written tasks, spelling, and advanced reading of technical materials.  Tr. 631.  Ms. Crawford recommended supportive counseling and noted that Plaintiff's employment potential might be best determined from a medical standpoint.  Tr. 632.

In a Psychiatric Review Technique Form ("PRTF") dated April 10, 2009, Jay Rankin, an agency consultant, determined Plaintiff's mental impairments were not severe.  Tr. 544-557.  Rankin found mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration.  Tr. 554.

On April 27, 2009, Plaintiff underwent spirometry testing at Fort Smith Lung Center.  Tr. 558-561.  Plaintiff coughed throughout testing, but gave fair effort.  Tr. 558.  FEV1 scores were 1.56, 1.52, and 1.55 pre-bronchodilator, and 1.57, 1.35, and 1.71 post-bronchodilator, respectively.  Tr. 559.

On April 28, 2009, Plaintiff saw Van Hoang, M.D., for a consultative physical examination.  Tr. 562-567.  Plaintiff reported the following impairments: COPD, emphysema, impaired hearing (right ear), GERD/reflux, chest pain on exertion, and depression.  Tr. 562-563.  She reported prior surgery to repair a perforated eardrum.  Tr. 562.  She stated she could walk two to three blocks before experiencing shortness of breath.  Tr. 563.  Running and lifting heavy objects caused chest pain.  Tr. 563.  She reportedly experienced chest pain three times per day.  Tr. 563.  Medications included Albuterol inhaler, Ranitidine, Spiriva, Nitroquick, Advair, and Fluoxetine.  Tr. 562.

On examination, Plaintiff could hear normal conversation.  Tr. 564.  She had normal breath sounds with no wheezing.  Tr. 564.  Heart rhythm and rate were normal.  Tr. 564.  Plaintiff had full range of motion in her cervical spine, lumbar spine, and all extremities.  Tr. 564.  No muscle spasms,

weakness, or atrophy were noted. Tr. 565. Plaintiff was able to walk on her heels and toes, stand without assistive devices, and squat/arise from a squatting position. Tr. 565. X-rays of Plaintiff's lumbar spine revealed mild accentuation of the normal lumbar lordosis, but no other abnormalities. Tr. 567. Dr. Hoang diagnosed Plaintiff with chronic COPD, emphysema, impaired hearing, GERD, and depression. Tr. 566. He found severe physical work limitations. Tr. 566.

In a Physical Residual Functional Capacity ("RFC") Assessment dated May 7, 2009, Jim Takach, M.D., found Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk/sit for about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 571-578. Dr. Takach determined Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 573. He found no manipulative or visual limitations, but noted Plaintiff should avoid situations where good hearing is necessary for safety or job performance. Tr. 575. Additionally, Dr. Takach determined Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.). Tr. 575.

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it

is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.    Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since February 6, 2009, the application date. Tr. 12. At step two, the ALJ found Plaintiff suffers from chronic obstructive pulmonary disease ("COPD"), decreased hearing, osteoarthritis, and

mood disorder, all of which were considered severe impairments under the Act. Tr. 12. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 12-16. At step four, the ALJ found Plaintiff could perform light work (stand/walk/sit six hours in an eight-hour day, lift/carry twenty pounds occasionally and ten pounds frequently), except she could occasionally climb, balance, stoop, kneel, crouch, and crawl, and must avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation, and could have no exposure to hazards, such as unprotected heights and heavy machinery. Tr. 16-19. Additionally, he determined Plaintiff could perform work where good hearing is not necessary for safety and job performance. Tr. 16-19. Mentally, the ALJ determined Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks, and respond appropriately to supervision, coworkers, the general public, and usual work situations. Tr. 16-19.

Since Plaintiff did not have any past relevant work, the ALJ proceeded to step five. Tr. 19. After receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Tr. 20. Accordingly, the ALJ determined Plaintiff was not under a disability from February 6, 2009, the application date, through March 24, 2010, the date of the decision. Tr. 21.

On appeal, Plaintiff contends that the ALJ erred by: (1) failing to find her urinary incontinence severe; (2) improperly determining her RFC; (3) improperly rejecting her subjective complaints; and (4) failing to develop the record. *See* Pl.'s Br. 9-18. The court agrees.

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as machine tender, of which there are 950 jobs regionally and 118,800 jobs nationally, housekeeper, of which there are 1500 jobs regionally and 169,700 jobs nationally, and small products assembler, of which there are 950 jobs regionally and 108,500 jobs nationally. Tr. 20.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000) (holding that it was improper for an ALJ to rely on the opinions of reviewing physicians alone). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the ALJ failed to fully develop the record with regard to Plaintiff's alleged depression/mood disorder. The record does not contain any mental RFC assessments from any treating, consultative, or agency physicians. *DiMasse v. Barnhart*, 88 Fed. App. 956, 967 (8th Cir. 2004) (record contained no mental RFC assessment). *See Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (reversible error for ALJ not to order a consultative examination where such evaluation is necessary to make an informed decision). Although Plaintiff did not specifically allege depression in her initial application paperwork, she discussed her depression in detail at the administrative hearing and also in the pre-hearing memorandum. Tr. 51-52, 64-65, 224-225. Additionally, Plaintiff's medical records reflect treatment for depression/mood symptoms with Prozac. Tr. 227-229, 297-300, 610-612. Ms. Crawford, a licensed psychological

examiner, noted that depression, insufficient physical/emotional energy, and difficulty concentrating would likely be problematic in an employment setting. Tr. 631. Moreover, the ALJ's own acknowledgment that Plaintiff's mood disorder is severe should have alerted him of the need to obtain a consultative mental evaluation to determine the full extent of Plaintiff's mental restrictions. Tr. 12. For these reasons, remand is necessary for further development of the record.

On remand, the ALJ should obtain a consultative mental evaluation. Additionally, he should seek clarification concerning Dr. Hoang's opinion that Plaintiff had severe physical limitations. Tr. 566. While the court agrees with the ALJ that Dr. Hoang's opinion is internally inconsistent, there are no physical RFC assessments from a treating or examining physician in this case. As such, clarification of Dr. Hoang's opinion would be useful in determining the full extent of Plaintiff's limitations and understanding why his findings were severe despite a fairly normal examination. Once the ALJ has obtained sufficient information concerning Plaintiff's mental and physical limitations, he should reassess Plaintiff's RFC, taking into account all her impairments, including her alleged urinary incontinence.

**V.**     **Conclusion**

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 1st day of December 2011.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE